Claflin v. French.

---

AARON CLAFLIN and others

*v.*

JOSHUA A. FRENCH and wife.

1. On a creditor's bill filed to subject lands conveyed by the defendant to the lien of a judgment and two promissory notes, *Held,* that the land must be decreed to be subject to the lien of the judgment; *aliter* as to the notes.

2. A trust in lands cannot be established by parol.

Creditor's bill.· On final hearing on pleadings and proofs.

*Mr. Jacob Weart,* for complainants.

*Mr. C. H. Winfield,* for defendants.

THE CHANCELLOR.

The bill states that the complainants, on or about the 25th of April, 1876, recovered a judgment in the supreme court of this state, against the defendant, Joshua A. French, for $974.58; that execution against the goods and lands of the debtor was duly issued thereon, to the sheriff of the county of Hudson, in which county French resided, which was duly returned by the sheriff *nulla bona aut tenementa,* and that the judgment is wholly unsatisfied. It further states that, in addition to the judgment, French, at the time of filing the bill, May 20th, 1876, owed the complainants the amount of two promissory notes (with interest and protest fees thereon), made in 1876, one by Isaac Edge and the other by William S. Gilbert, each payable to the order of French, by whom they were endorsed to the complainants, both of which have been dishonored, and duly protested accordingly. No judgment has been recovered on these notes or either of them. The bill seeks to subject to the payment of these debts the property of French, which it is alleged is, in fraud of his creditors, held in trust for him by his wife. The bill states that in 1869 he owned the half of a lot of land in Jersey City, worth from $7,000 to $8,000; that in 1870 he sold his interest in the property to Patrick Walsh, for $7,500, receiving $1,100 in cash, on account of the purchase money, and a mortgage on the premises sold for the balance, $6,400; that on the 15th of October, 1872, there were due on the mortgage $4,400, Walsh having previously paid $2,000 on account of it; that at that date French assigned the mortgage to Richard Cadmus, for the full amount due on it; that in June, 1872, Cadmus sold and conveyed to Mrs. French a lot of land in Bayonne, and in January, 1873, he sold to her

Claflin *v.* French.

five other lots, which six lots lay together; that in 1872 she built a house on the property, for the residence of herself and her husband and their family, at a cost of $6,800; and that she has expended $250 in building fences on the property; and that the property and improvements cost $10,050, to which French contributed $6,550, of which $4,400 were the proceeds of the assignment of the Walsh mortgage, and $2,000 the money which he had previously received thereon, and also contributed money taken from his business.

The defendants, by their answer, admit that these lots were paid for substantially as stated in the bill, and that a part of the consideration was the proceeds of the sale of the premises sold to Walsh, but they deny that French contributed any money drawn from his store, to the buildings or other improvements. French and his wife both testify that of the money used in paying for the property, $5,500 were the proceeds of the sale to Walsh. They insist by the answer that that money was held by French in trust for his children. The statement of the answer on the subject is as follows:

"Two or three days before the death of his (French's) said mother, which occurred March 4th, 1869, his said mother executed a deed to him for an undivided half of the lot referred to, with this verbal and express direction and condition, that he should sell his interest in the said lot as soon as he could dispose of it at a fair price, and invest the money received therefor so that it should be safe for his children."

He says, in his testimony: "She (his mother) willed it (the whole property) to my sister, to go to her as long as she lived, and the proceeds then to go to my family; and my sister would not have it that way; she wanted her share, and my children's share to be deeded to them; my children wasn't of age then, at least one of them; she deeded to me, to pay her doctor's bill and funeral expenses, $1,300 upon a mortgage against it; the balance to go to my family." These directions were oral, he says. He adds that nobody was present but his sister. The will, he says, was destroyed at

the request of his sister. In his testimony, taken on proceedings under the judgment for discovery of property, he says : " That property was left to my children by my mother when she was dying; she hadn't time to make a will, so she divided the property between my children, self and my sister, and gave me a deed for one-half, with a request that I give it to my children." His wife testifies that she holds the $5,500 for herself and her children.

Now, apart from the objection that the alleged trust on which, as French says, he held the property and the proceeds of the sale thereof, was never manifested, and is not proved by any writing, and is admitted to have been created merely by the oral request of his mother that he would give the property to his children, the evidence of the existence of it is entirely unsatisfactory. There is no evidence that he ever declared or accepted or agreed to hold the property upon any trust. His statements on the subject are contradictory. In his testimony in this suit he says his mother made a will, and that it was subsequently destroyed at the request of his sister. In his examination under the order for discovery, he says that the property was left to his children by his mother when she was dying ; that she had not time to make a will. The deed is dated on the 26th of February, 1869, and was acknowledged on that day. His mother did not die until the 4th of March following. There is no corroboration whatever of his statements on the subject of the alleged trust.

His testimony on this head appears still less entitled to credit in connection with that which he gives in reference to the note given by him to the complainants on account of their debt. He swears that it was an accommodation note merely, whereas it was undeniably given for a debt due them from him. The complainants will be entitled to a decree charging on the land held by the wife the amount of their judgment, but not the amount of the notes, on which no judgment has been obtained, for their debt is not established as to them, and they have no lien in respect thereof.